PER CURIAM:
Claimant and respondent entered into a contract on or about July 1, 1990, and terminated as of June 30, 1991. Claimant operates certain facilities for youth offenders who are in the custody of the respondent State agency. A dispute arose between the parties as to the calculation of the final payment due claimant under the terms of the contract.
The contract states, in part:
V. CONTINGENCY PLAN/GOOD FAITH EFFORT
It is anticipated and believed that, at a minimum, thirty percent (30%) of Provider’s operating expenses are for services related to the health needs of the residents. It is further believed that all or most of said services can be supported with revenue from Title XIX Medicaid and/or other third-party payments.
It is, however, recognized that, unless Provider has previously been certified as a Medicaid Provider, payments from Medicaid may not be immediately forthcoming. Therefore the decreasing rates specified in Section IV of this Agreement have been designed to *176 address the possible time lag associated with receiving Medicaid reimbursement.
In the event that at least thirty percent (30%) of aggregate costs are not reimbursable by Medicaid or other third-party payments, Department agrees to cover the short-fall up to the level of FY 1989-90 Social Service funding, PROVIDED THAT Department determines that Provider has made a good faith effort to receive Medicaid and/or other reimbursement for all services possible. (Emphasis supplied).
The intent of this provision in the contract was further clarified in correspondence dated July 24,1990, wherein Ruth Ann Panepinto, Ph.D., Commissioner, Bureau of Community Support, for respondent, stated as follows:
Enclosed is the contract between our agencies for the operation of the status offender facilities at both Laurel park and Grant Gardens for FY 1990-91. The intent of this contract is to decrease social service funding while at the same time allowing Pressley Ridge to recover all legitimate program costs for FY 1990-91. The Department’s participation is limited to $1,048,353 even though we understand that your projected costs for these two programs is $1,308,304. We believe that revenue from Medicaid will cover the projected deficit. If income exceeds the projected $1,308,304, the contract mechanism for repayment to the Department will prevail.
(Emphasis supplied).
Claimant brought this action to recover $156,297.00 which respondent refused to pay to the claimant under the terms of the contract as respondent contends that claimant is not entitled to recover its shortfall.
The Court is of the opinion that the contract is unambiguous and that the intent of the parties is clear. Respondent agreed to reimburse claimant up to a cap of $1,048,535.00. Claimant was able to obtain funding from Medicaid to cover a portion of its costs; however, claimant incurred a shortfall of $156,297.00. Respondent agrees that the amount of the shortfall is not in dispute and, further, that claimant made a good faith effort to obtain Medicaid or other reimbursement for all services rendered. Therefore, the Court has determined that the terms of the contract as quoted herein above provide that claimant is entitled to recover the amount of its shortfall.
Accordingly, the Court is of the Opinion to and does made an award to claimant in the amount of $156,297.00.
*177 Award of $156,297.00.